SIMON W. STRAUS, trustee, complainant,

*v.*

WILLIAM B. LOUDENSLAGER et al., defendants.

[Decided June 27th, 1924.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinions:

FIRST OPINION.

"I think it entirely clear that under the averments of complainant's bill he is entitled to be relieved from the enforcement of the decree heretofore entered against his mortgagor until he shall have had his day in court.

"It is an established equitable doctrine that 'a suit in chancery, duly prosecuted in good faith, and followed by a decree, is constructive notice to every person who acquires from a defendant *pendente lite,* an interest in the subject-matter of the litigation, of the legal and equitable rights of the complainant as charged in the bill and established by the decree.' This rule has been modified by the *Lis Pendens* act to the extent that constructive notice is imputed only from the time a *lis pendens* shall have been filed. *Haughwout & Pomeroy* v. *Murphy,* 22 N. J. Eq. 531.

"But one who has acquired from a defendant an interest in the subject-matter of the litigation prior to the litigation, or prior to the time a *lis pendens* is filed, is not charged with constructive notice and cannot be bound by the decree on any theory of constructive notice. *Slack* v. *John, 63 N. J. Eq. 126.*

"Nor is one who has acquired an interest from a defendant prior to the time referred to regarded as a privy in the sense that privies are bound. In order that such privy shall exist the succession must have occurred after that time. *24 Am. &*

*Eng. Encycl. L.* [*2d ed.*] *747.* 'While a mortgagee is privy in estate with a mortgagor as to actions begun before the mortgage was given [in this state as to actions begun and *lis pendens* filed before the mortgage was given], he is not bound by judgments or decrees against the mortgagor in suits begun by third parties subsequent to the execution of the mortgage, unless he or some one authorized to represent him, like the trustee of a mortgage bondholder, is made a party to the litigation, although it would be otherwise if the mortgage were executed pending the suit or after the decree.' *Keokuk and Western Railroad Co.* v. *Missouri, 152 U. S. 301, 314.*

"There can be no doubt that a mortgagee whose mortgage has been executed prior to litigation touching the mortgaged premises enjoys such an interest in the property covered by his mortgage as entitles him to be heard touching any matter that may adversely affect the value of his security. *24 Am. & Eng. Encycl. L. (2d ed.) 750.* A decree for the enforcement of a restrictive building covenant is obviously of that nature, since it prevents the use of the land for purposes entirely lawful, but for the existence of the restrictive covenant, and thus establishes rights in others in the nature of easements affecting the land.

"It necessarily follows that the respective covenants here in question cannot be now enforced to the detriment of complainant herein until complainant shall have been heard touching their validity and binding force, unless complainant has in some way denied to himself the right to be heard. If complainant is in no way bound by the decree because not made a party to the litigation, obviously, the decree is a nullity as to him.

"It has been broadly held in some jurisdictions that any person who is directly interested in a suit and has knowledge of its pendency, and who refuses or neglects to appear and avail himself of his rights, is concluded by the judgment rendered therein. *In Den* v. *Fen,* 3 *N. J. Law 478,* a mortgagee applied and was admitted to defend in an action of ejectment against his mortgagor unless plaintiff should dis-

charge the mortgage. Whether failure of a mortgagee to intervene and defend, after actual notice, would be operative as a bar to a bill of this nature, need not be here considered, since the bill does not disclose such notice. It has also been held in equity that one may be bound by a judgment who has in fact or effect defended, though not a party to the record. *Lyon* v. *Stanford, 42 N. J. Eq. 411.* It would also seem that under general equitable doctrines a mortgagee who has stood by with notice of the suit, and, in effect, speculated on its result before asserting rights, or who has controlled or even contributed to the defense, would properly and justly be denied protection against the decree. But since these facts are not disclosed by the bill, further consideration of their effect need not be here indulged.

"I will deny the motion of defendant to strike out the bill."

### SECOND OPINION.

"The present record, unlike the record heretofore before the court, discloses with clearness and in detail that the removal of the bay windows, not only will be a source of great cost to the owners and loss to the revenue-producing capabilities of the hotel, the latter a matter of direct concern to the bondholders, but also discloses with entire clearness that the removal of the bay windows will not be of the slightest degree of benefit to anyone, and, on the contrary, will be of real detriment to everyone having any interest in that locality, since it will seriously injure the appearance of the present building by substituting an expanse of flat wall for its present more attractive appearance. The only justification that is now urged by the original complainant for the present enforcement of this devastating decree is a claim to the effect that any failure on his part to continue his efforts to cause the removal of the bay windows may militate against future efforts to enforce the covenants against other possible violations. ,

"It is also now made apparent that the encroachment to the bay windows over the line which separates the two tracts

was purely a blunder or mistake upon the part of someone, whereas at the time the enforcement decree was entered there was strong ground for belief that the encroachment was a deliberate attempt to resist and defy the decree as originally entered. I fully believe the statement now made by Mr. Straus to the effect that he did not know, and does not believe that anyone connected with his organization knew, that the bay windows projected over the line until after the hotel building was under roof; at that time all of the bay windows appear to have been completed except the bricking in or encasing of one window on the fourteenth floor.

"Had the present record been before the court at the time the enforcement decree was signed, I think it more than doubtful whether that decree would have been ordered entered.

"It must be here assumed that the projecting bay windows violate the covenant, which provides that 'private dwellings only shall be built on' the Hemsley tract, since the bay windows project from and form a part of the hotel building, although the hotel is wholly built on another tract, except as to the bay windows, which are admittedly suspended above the Hemsley tract. But when the spirit of that covenant is contemplated as one to protect the Hemsley tract from having any buildings erected upon that tract other than private residences, its violation by these overhanging bay windows extending from a hotel erected on another tract seems too inconsequential under the evidence now before the court to justify the hardships that will flow from the enforced removal of the bay windows after their completion, especially when considered in connection with the facts now disclosed, that the encroachment of the bay windows was through a mistake, and that their presence is harmful to no one in the slightest degree. See *Hemsley* v. *Marlborough House Co., 68 N. J. Eq. 596, 601; Sanford* v. *Kerr, 80 N. N. J. Eq. 240, 248.* As to the covenant protecting three feet adjacent to the rear dividing line, the present record discloses so many instances of its non-observance that the right to its enforcement as a part of the original scheme, and es-

pecially as to a completed structure of this nature, may well be said to be not wholly free from doubt. The testimony discloses that there are no buildings at this time on any lots of the Hemsley tract west of Stenton avenue between the bulkhead line of Pacific avenue, but all lots west of Stenton avenue, between Pacific and Atlantic avenues—eight in number—have been built upon; of these eight buildings five encroach upon the restricted area contrary to the provisions of that covenant. It will be observed that this covenant permits bay windows to extend two feet over the three .feet restricted area. The bay windows here complained of appear to be two feet and ten inches in depth.

"I am convinced that the execution of the decree known as the enforcement decree, for the removal of the bay windows, should be denied at this time upon the broad ground that it would be inequitable to do so in view of the facts disclosed by the present record, which did not adequately appear at time the enforcement decree was ordered entered. Upon that ground I think it my duty to advise a decree for relief from the enforcement decree pursuant to the prayer of the present bill."

*Mr. Norman Grey,* for the complainant.

*Messrs. Bourgeois & Coulomb,* for the defendants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS—12.

*For reversal*—None.